The Honorable Frank White, Commissioner Arkansas State Bank Department 323 Center, Suite 500 Little Rock, AR 72201-2663
Dear Commissioner White:
I am writing in response to your request for my opinion on the following questions:
 1. Is the formula rate under amendment 78 to the Arkansas Constitution, required to be set quarterly by the Bank Commissioner, subject to the maximum lawful rate of interest as set by Amendment 60
to the Arkansas Constitution?
 2. If it is subject to the maximum lawful rate of interest as set by Amendment 60, must the formula rate be altered during a calendar quarter if the federal discount rate is changed during the calendar quarter?
RESPONSE
In my opinion, the answer to your first question is "no," which renders your second question moot.
Question 1: Is the formula rate under amendment 78 to the ArkansasConstitution, required to be set quarterly by the Bank Commissioner,subject to the maximum lawful rate of interest as set by Amendment 60 tothe Arkansas Constitution?
Section 2(a) of amendment 78 to the Arkansas Constitution provides in pertinent part:
 For the purpose of acquiring, constructing, installing or renting real property or tangible personal property having an expected useful life of more than one (1) year, municipalities and counties may incur short-term financing obligations maturing over a period of, or having a term, not to exceed five (5) years.[1]
The amendment provides for either fixed or variable interest on any such obligation to be computed by reference to a "formula rate," which is defined as follows:
 "Formula rate" means that rate of interest which is five percentage points (5%) above the equivalent bond yield of one year United States Treasury Bills offered by the United States Treasury at the last auction during the immediately preceding calendar quarter, calculated by rounding up to the nearest one-fourth of one percentage point (0.25%) (unless the equivalent bond yield is already by a multiple of one-fourth of one percentage point), and announced by the State Bank Commissioner (or such successor official who may be performing substantially the same duties) from information available from the Federal Reserve System of the United States. The calculation of the formula rate shall be made on or before the tenth (10th) day of each calendar quarter. The formula rate so calculated shall be effective on the eleventh (11th) day of the calendar quarter and shall continue in effect until the formula rate for the succeeding calendar quarter shall have been calculated and becomes effective. If, for any reason, the United States ceases to issue one year Treasury Bills, such calculation shall be made using a debt instrument of the United States having substantially the same general character and maturity. The calculation and announcement of the formula rate by the State Bank Commissioner shall be final.
You have asked me to opine regarding which constitutional provision will control if the formula rate thus computed exceeds the maximum rate of interest allowed under the 1982 Interest Rate Control Amendment, Ark. Const. amend. 60, which has been incorporated into Ark. Const. art. 19, § 13.
In my opinion, the formula rate as calculated pursuant to the formula set forth above should apply even if the calculation exceeds what would be permitted under Ark. Const. art. 19, § 13. The Arkansas Supreme Court has held that "the rules of statutory construction also apply to the interpretation of constitutional amendments. Bailey v. Abington,201 Ark. 1072, 148 S.W.2d 176 (1941)." McDonald v. Bowen, 250 Ark. 1049,1055, 468 S.W.2d 765 (1971). It is an accepted principle of statutory construction that the provisions of an act adopted later in time repeal the conflicting provisions of an earlier act. Daniels v. City of FortSmith, 268 Ark. 157, 594 S.W.2d 238 (1980). Moreover, as the court noted in Scott v. Greer, 229 Ark. 1043, 1048, 320 S.W.2d 262 (1959):
 "Where general terms or expressions in one part of a statute are inconsistent with more specific or particular provisions in another part, the particular provisions will be given effect as clearer and more definite expressions of the legislative will." We have quoted the above rule from Hodges v. Dawdy, 104 Ark. 583, 149 S.W. 656. It was also recognized in Wiseman v. Ark. Util. Co., 191 Ark. 854, 88 S.W.2d 81. In 50 Am.Jur. 371 "Statutes" 367, the text states: "It is an old and familiar principle . . . that where there is in the same statute a specific provision, and also a general one which in its most comprehensive sense would include matters embraced in the former, the particular provision must control, and the general provision must be taken to affect only such cases within its general language as are not within the provisions of the particular provision." To the same effect see also 82 C.J.S. 720; and Crawford on "Statutory Construction" 189.
In the present case, amendment 78 not only follows amendment 60 in time, it also more specifically addresses the issue of computing interest on municipal or county short-term financing obligations. It follows that the provisions of amendment 78 should trump those of amendment 60 in the event of a conflict. I am only reinforced in this conclusion by section 3 of amendment 78, which provides:
 The authority conferred by this amendment shall be in addition to the authority of municipalities and counties to issue bonds and other debt obligations pursuant to Amendments 62, 65, and 72, and other provisions of the Constitution and laws of the state.
This provision reflects the electorate's intention to enhance by the adoption of amendment 78 the terms on which counties and municipalities can issue debt obligations.
Question 2: If it is subject to the maximum lawful rate of interest asset by Amendment 60, must the formula rate be altered during a calendarquarter if the federal discount rate is changed during the calendarquarter?
This question is moot in light of my conclusion that the restrictions set forth in amendment 60 do not apply.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP/JHD:cyh
[1] The term "short-term financing obligation" is defined as follows:
 "Short-term financing obligation" means a debt, a note, an installment purchase agreement, a lease, a lease-purchase contract, or any other similar agreement, whether secured or unsecured; provided, that the obligation shall mature over a period of, or have a term, not to exceed five (5) years.
Ark. Const. amend. 78, § 2(b)(1).